*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TERRY LEE HURST, JR.,

      Defendant-Appellant.

UNPUBLISHED
February 18, 2025
3:03 PM

No. 365434
Ionia Circuit Court
LC No. 2022-018481-FC

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant, Terry Lee Hurst, Jr., asks us to vacate his convictions of multiple counts of criminal sexual conduct. A jury convicted Hurst of five counts of first-degree criminal sexual conduct (CSC-I) for engaging in sexual penetration of a person under 13 years of age, MCL 750.520b(1)(a); five counts of second-degree criminal sexual conduct (CSC-II) for engaging in sexual contact with a person under 13 years of age, MCL 750.520c(1)(a); one count of third-degree criminal sexual conduct (CSC-III) for engaging in sexual penetration of a person who was at least 13 years of age and under 16 years of age, or for engaging in sexual penetration through force or coercion, MCL 750.520d(1); and one count of fourth-degree criminal sexual conduct (CSC-IV) for engaging in sexual contact with a person who is at least 13 years of age and under 16 years of age at a time when he was five or more years older than that other person, or for making sexual contact through force or coercion, MCL 750.520e(1). The trial court sentenced Hurst to serve 25 to 50 years in prison for each of his CSC-I convictions, 10 to 15 years in prison for each of his CSC-II convictions and his CSC-III conviction, and 1 to 2 years in prison for his CSC-IV conviction. The trial court also ordered Hurst to serve his sentences for Counts I and II consecutively and ordered him to submit to lifetime monitoring under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, and to submit to lifetime electronic monitoring, among other sentencing requirements. We hold that no error entitles Hurst to his requested relief, except that the trial court erred by sentencing Hurst to serve consecutive sentences for Counts I and II. Accordingly, we affirm in part, vacate in part, and remand the case to the trial court for the ministerial task of amending the judgment of sentence.

# I. BACKGROUND

Testimony established that Hurst began to sexually assault his stepdaughter, NC, when she was about five years old. The abuse escalated after Hurst moved with his family to Ionia and it lasted until NC was about 15 years old, which was around 2011. Evidence also showed that Hurst then began to sexually assault his niece, IC, when she was seven years old when she stayed at his home while her mother worked and during school breaks. Hurst abused IC until she was about 11 years old, which was around 2018 and was also when IC began to resist going to Hurst's home. According to the trial testimony, Hurst's victims disclosed the abuse in 2021 and Hurst was arrested in January 2022. The jury convicted Hurst of 12 counts of criminal sexual conduct as described, and the trial court sentenced him in February 2023. This appeal followed.

# II. OTHER-ACTS EVIDENCE

Hurst argues that the trial court deprived him of a fair trial by allowing NC to testify about the first time Hurst sexually assaulted her. He argues that it amounted to a violation of due process to allow her to testify about that event because it occurred in Grand Rapids, not Ionia, and the testimony was unfairly prejudicial. He also argues that defense counsel's handling of that testimony amounted to ineffective assistance of counsel.

## A. PRESERVATION

To preserve a claim of evidentiary error for appeal, Hurst had to raise an objection in the trial court and specify the same ground on appeal. See *People v Clark*, 330 Mich App 392, 414; 948 NW2d 604 (2019). Defense counsel did not object to NC's testimony about the incident in Grand Rapids. The first time anyone characterized NC's testimony as other-acts evidence was after the prosecution called its last witness and the trial court began to discuss the proposed jury instructions. At that time, defense counsel did not object to NC's testimony about the incident in Grand Rapids, he did not challenge the evidence on due process grounds, lack of notice or as a violation of any statute or court rule. Accordingly, Hurst's claims of error involving due process and the trial court's admission of the testimony are not preserved. See *id*.

Hurst also argues that, to the extent that defense counsel did not object to NC's testimony about the incident in Grand Rapids or move for a mistrial after the trial court expressed that it could have been excluded, defense counsel provided ineffective assistance. To preserve a claim of ineffective assistance premised on facts, not of record, Hurst had to move to develop the record at an evidentiary hearing. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Hurst moved in this Court for an evidentiary hearing, but this Court denied the motion without prejudice for failure to persuade of the need for a remand.[1] Hurst did not have to take any special

---

[1] See *People v Hurst*, unpublished order of the Court of Appeals, entered December 27, 2023 (Docket No. 365434). This Court's order provided that "[d]enial of remand is without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted

-2-

steps to preserve a claim of ineffective assistance of counsel premised on errors that are apparent on the record alone. See *Sabin*, 242 Mich App at 658-659.

## B. STANDARDS OF REVIEW

This Court reviews de novo whether a rule or statute governing the admission of evidence violates due process. See *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). This Court reviews a trial court decision to admit evidence for an abuse of discretion. See *People v Roper*, 286 Mich App 77, 90; 777 NW2d 483 (2009). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Daniels*, 311 Mich App 257, 264-265; 874 NW2d 732 (2015). This Court reviews de novo, however, whether the trial court properly applied the rules and statutes governing the admission of evidence. *Roper*, 286 Mich App at 91. A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law. *Id.*

This Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture of an unpreserved error, the defendant must show that there was error, that the error was clear or obvious, and that the plain error affected his or her substantial rights. *Id.* An error affects substantial rights when it affected the outcome of the lower court proceedings. *Id.* Even if the defendant establishes a plain outcome-determinative error, this Court has the discretion to refuse relief. This Court may only grant relief "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citation omitted; alteration in original).

Whether defense counsel provided ineffective assistance at trial involves a mixed question of fact and law. *People v Gioglio (On Remand)*, 296 Mich App 12, 19; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012). This Court reviews de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Id.* at 19-20. Because the trial court did not hold an evidentiary hearing on this claim of error, there are no factual findings to which this Court must defer, and this Court's review is for mistakes that are apparent on the record alone. See *id.* at 20.

## C. DUE PROCESS

Hurst asserts that the trial court's failure to intervene and prevent the admission of NC's testimony about the incident in Grand Rapids amounted to a violation of due process. The Supreme Court of the United States has held that the states have "broad latitude under the Constitution to establish" rules governing the introduction of evidence. *United States v Scheffer*, 523 US 303, 308; S Ct 1261; 140 L Ed 2d 413 (1998). A defendant's right to present his or her defense must normally bow to the state's legitimate interests in the management of the criminal

---

on a session calendar." Upon full review of this matter, we do not find remand necessary to properly dispose of Hurst's claims.

trial process. *Id*. Nevertheless, the Supreme Court of the United States has held that a state's rule may violate due process if the rule is arbitrary or disproportionate to the purpose for which it was designed. *Id*.

Michigan's Legislature determined that, as a matter of public policy, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). The Legislature defined a "minor" to be a person who was less than 18 years of age and defined a "listed offense" to include, in relevant part, criminal sexual conduct. See MCL 768.27a(2).

As our Supreme Court has explained, MCL 768.27a allows the admission of other-acts evidence to demonstrate a defendant's propensity to engage in sexual acts with a minor. *People v Watkins*, 491 Mich 450, 470-472; 818 NW2d 296 (2012). If the prosecution establishes that evidence is admissible under MCL 768.27a, it does not also have to show that the evidence is admissible under MRE 404(b). *People v Buie (On Remand)*, 298 Mich App 50, 74; 825 NW2d 361 (2012).

Despite asserting that the admission of NC's testimony amounted to a violation of due process, Hurst offers no analysis of MCL 768.27a or its substantive purpose of protecting children and prosecuting those who sexually assault children. See *Watkins*, 491 Mich at 476. By failing to offer an analysis of the applicable law when challenging a rule of evidence on due process grounds, Hurst has abandoned this issue. See *Clark*, 330 Mich App at 426.

Further, this Court has already held that MCL 768.27a does not violate due process. *People v Muniz*, 343 Mich App 437, 460-461; 997 NW2d 325 (2022). Because evidence admitted under MCL 768.27a remains subject to the rules of relevance and admissibility, see MRE 401; MRE 402, and can be excluded under MRE 403, the statute does not deprive defendants of a fundamentally fair trial. See *id*. For these reasons, Hurst has not shown that the trial court plainly erred to the extent that it rejected a due-process challenge to the admission of the evidence.

D. MRE 403

Hurst also argues that the trial court should have excluded NC's testimony on its own initiative under MRE 403. Our Supreme Court has held that trial courts must apply MRE 403 when considering whether to admit evidence that would otherwise be admissible under MCL 768.27a(1). *Watkins*, 491 Mich at 455. MRE 403 allows a trial court to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.[2] A trial court may not exclude evidence under MRE 403 simply because it is prejudicial because all relevant evidence

---

[2] Our Supreme Court substantially amended the Michigan Rules of Evidence on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We cite the version of the rules in effect at the time of trial.

is prejudicial; it only provides for the exclusion of evidence that is unfairly prejudicial. *People v McGhee*, 268 Mich App 600, 607; 709 NW2d 595 (2005). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Our Supreme Court has rejected the argument that the propensity value of evidence admitted under MCL 768.27a(1) should be weighed against its admission. The Court explained that doing so would undermine the Legislature's policy choice that such evidence may be used for any relevant purpose. *Watkins*, 491 Mich at 486. For that reason, the *Watkins* Court held that "courts must weigh the propensity inference *in favor* of the evidence's probative value rather than its prejudicial effect." *Id*. at 487 (emphasis added). The Court nevertheless concluded that evidence otherwise admissible under MCR 768.27a(1) might still be excludable under MRE 403:

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id*. at 487-488.]

NC's testimony about her recollection of the first time Hurst sexually assaulted her was not overly prejudicial under MRE 403. NC's testimony established that she had a firm memory of the event. She recalled that it occurred when she and her family lived in Grand Rapids, and she testified that she was four or five years old.[3] NC testified about various details, including that Hurst gave her juice that tasted awful and that Hurst had her change into her pajamas. NC also remembered that she put on a Scooby-Doo nightgown that her great-grandmother made for her. NC also testified that Hurst initiated the sexual contact through a game of airplane and NC described how the game evolved from rubbing their groins together to Hurst engaging her in penile-anal sexual intercourse. NC further recalled that she asked Hurst to stop, but he did not stop and remarked that it would feel good.

NC's testimony about the first attack was highly relevant to establish Hurst's propensity to engage in sexual contact with very young children, and especially his propensity to engage in sex acts with NC. Hurst's propensity for sexually assaulting children weighed in favor of the admission of her testimony. See *id*. at 487. The evidence that Hurst had a predilection for satisfying his sexual urges with children also corroborated IC's testimony that Hurst engaged her in sexual activities when she was seven years old, and possibly earlier.

---

[3] NC's testimony that she was about four or five years old when she lived in Grand Rapids with Hurst and her mother was consistent with other testimony about when the family lived there.

Evidence about the assault in Grand Rapids was also consistent with evidence of Hurst continuing to sexually assault NC after they moved to Ionia. As discussed, NC testified that Hurst began the first sexual assault with a game that involved rubbing his groin against her groin. Testimony established that Hurst similarly began his sexual contact with NC and IC in Ionia with rubbing or touching. The fact that Hurst initiated the contact through a game was also consistent with NC's testimony that, during later events, Hurst would use television or other treats to get her to comply with his sexual abuse.

The evidence from the first assault also established that Hurst tried to normalize his sexual abuse. NC stated that Hurst refused to stop assaulting her during the first incident and explained to her that she would enjoy it. NC described similar incidents involving the sexual assaults in Ionia. She stated that Hurst tried to vaginally penetrate her on one occasion, and when it hurt too much, he told her that she would like it someday. He also told her that she would someday like having oral sex performed on her, and he told her that some women liked to swallow semen. NC characterized Hurst's comments as trying to get her to be a willing participant in her own abuse. The evidence about Hurst's comments was compelling proof that Hurst not only viewed small children as legitimate sexual partners, but that he tried to convince his victims that his abuse was something that they should willingly endure.

Thus, NC's testimony about the first incident in Grand Rapids shared many similarities with the acts that occurred in Ionia, in addition to being highly probative of Hurst's propensity to engage in sexual conduct with very young children. The disputed testimony also did not involve an unrelated victim and was not separated from the events at issue by any temporal gap. Indeed, NC's testimony about the incident in Grand Rapids established only that it was the first incident in a years' long series of sexual assaults, and the only reason Hurst was not specifically charged for the assault was because it occurred in a different county.

The testimony about the assault in Grand Rapids was not—contrary to Hurst's contention on appeal—particularly prejudicial when considered with NC's testimony about the subsequent assaults. NC testified that Hurst's preferred sexual assault involved anally penetrating her, and she stated that he did that for years after the first assault. Likewise, NC and IC both testified that Hurst sexually assaulted them far more times than were encompassed by the 12 charges brought in Ionia County. For that reason, NC's testimony about the first incident only served to identify the starting point for a long pattern of sexual abuse with no intervening events that might undermine the relevance of the first. The factors identified by our Supreme Court in *Watkins* all weighed in favor of the admission of NC's testimony about the first incident. See *Watkins*, 491 Mich at 487.

NC's testimony about the first incident was relevant and admissible under MCL 768.27a(1) for many purposes in addition to establishing Hurst's propensity. See MRE 401; MRE 402. On this record, it was not likely that the jury would give undue or preemptive weight to NC's description of that event. See *Crawford*, 458 Mich at 398. Accordingly, the trial court did not plainly err by failing to prevent NC from offering that testimony. See *Carines*, 460 Mich at 763.

## E. NOTICE

Hurst also argues that the prosecutor's failure to provide him with formal notice that the prosecution intended to ask NC about the first incident deprived him of a fair trial. We disagree.

Typically, when a prosecutor wishes to introduce evidence of other acts at trial, the prosecutor has an obligation to provide written notice of the general nature of the evidence it intends to introduce and the rationale for admitting the evidence. See MRE 404(b)(2). By contrast, the Legislature did not impose the same requirement under MCL 768.27a(1), which states:

> If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial . . . , including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered. [MCL 768.27a(1).]

By its plain terms, MCL 768.27a(1) does not require a prosecutor to give the defense formal notice that it intends to offer evidence that the defendant committed another listed offense against a minor at trial. It only requires the prosecutor to "disclose the evidence" to the defense at least 15 days before trial. The record showed that, long before trial, the prosecutor turned over a police report that included NC's recollection of the first assault. The record also showed that the prosecutor gave a copy of his proposed jury instructions to the defense, which included instructions on evidence admitted under MCL 768.27a. Considering the record as a whole, Hurst has not shown that the prosecutor failed to adequately disclose the evidence at issue.

We further note that Hurst has not identified any new basis for excluding NC's testimony about the first sexual assault and he has not identified how he would have altered his trial strategy if he had formal notice of NC's proposed testimony. To the contrary, the record reflects that defense counsel reviewed NC's recitation of events from the police report, and cross-examined NC about the differences between the police report and her trial testimony. Accordingly, defense counsel knew that NC previously disclosed that the abuse began in Grand Rapids and was prepared to address that issue at trial. For these reasons, Hurst has not established plain error involving notice that warrants any relief. See *Carines*, 460 Mich at 763.

## F. INEFFECTIVE ASSISTANCE OF COUNSEL

Hurst also argues that defense counsel's handling of NC's testimony about the first incident amounted to ineffective assistance of counsel. To establish his claim of ineffective assistance, Hurst must show that defense counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for defense counsel's error, the result of the proceeding would have been different. See *Gioglio*, 296 Mich App at 22, citing *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Gioglio*, 296 Mich App at 23. In establishing these elements, Hurst must overcome a

strong presumption that defense counsel provided effective assistance. See *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021).

As already discussed, there was no basis to exclude NC's testimony because her testimony was plainly admissible under MRE 401, MRE 402, and MCL 768.27a(1), and was not unfairly prejudicial under MRE 403. Defense counsel had no obligation to make a meritless objection premised on these rules. See *Clark*, 330 Mich App at 426.

Defense counsel similarly cannot be faulted for failing to move for a mistrial after NC's testimony on the basis that it was unfairly prejudicial or for lack of notice. A trial court can only grant a mistrial when there was an error that was so egregious that its prejudicial effect could only be removed by granting a mistrial. See *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). Because NC's testimony was admissible, the only basis for a mistrial would be the prosecutor's failure to provide defense counsel with more formal notice that it intended to elicit NC's testimony about the first sexual assault. Defense counsel was actually aware of NC's anticipated testimony from the police report and cross-examined her using the report. Therefore, defense counsel could not have established that a mistrial was warranted. For that reason, defense counsel had no obligation to move for a mistrial premised on NC's testimony about the first incident of abuse. See *Haynes*, 338 Mich App at 416 n 2.

Hurst has not established that defense counsel's handling of NC's testimony fell below an objective standard of reasonableness under prevailing professional norms. See *Gioglio*, 296 Mich App at 22. Further, in light of the overwhelming evidence supporting the verdict, Hurst has not shown that, but for defense counsel's failure to object or move for a mistrial, there is a reasonable probability that the outcome would have been different. See *id*. at 23.

### III. PROSECUTORIAL MISCONDUCT

### A. STANDARDS OF REVIEW

Hurst next argues that the prosecutor deprived him of a fair trial in his closing remarks and that defense counsel was ineffective for failing to object to the remarks. Again, we disagree.

This Court reviews de novo whether a prosecutor's misconduct deprived the defendant of a fair and impartial trial. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). However, because defense counsel did not object to the remarks, this Court's review is limited to determining whether the remarks amounted to plain error that affected Hurst's substantial rights. See *Carines*, 460 Mich at 763. As for the claim of ineffective assistance, this Court reviews de novo as a question of constitutional law whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Gioglio*, 296 Mich App at 19-20.

### B. ANALYSIS

On appeal, Hurst argues that the prosecutor improperly appealed to the jury's sympathy for NC and vouched for NC's credibility in his closing statement. The prosecutor's role is to "seek justice and not merely convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

A prosecutor can jeopardize a defendant's right to a fair trial by interjecting issues broader than the defendant's guilt or innocence. *Id*. at 63-64. This Court examines claims of prosecutorial misconduct on a case-by-case basis and on the whole record to determine whether the conduct at issue was improper and deprived the defendant of a fair trial. *Id*.

In his closing statement, the prosecutor reminded the jurors that defense counsel informed them that there was no physical evidence, and he acknowledged that this was true; he told the jury that there would be no evidence other than the evidence that came from the witness stand. The prosecutor noted, too, that it was the defense's belief that the evidence would show that NC and IC had motives to lie. The prosecutor did not agree; he asked the jurors to focus on the evidence and determine for itself whether NC and IC had anything to gain by coming forward with their allegations. He suggested that the evidence showed that there was no benefit to them and that there were significant losses. The prosecutor then summarized the evidence about NC's and IC's behaviors and the circumstances of their revelations. He argued that the evidence tended to corroborate their credibility. The prosecutor then turned to NC's delay in disclosing the abuse and her ultimate decision to come forward:

> But then with age comes the realization, okay? Around fifth or sixth grade health class, they're talking about sex ed, things like that. They're talking about bodies. Things are starting to trigger. Oh, my gosh, you mean this doesn't happen everywhere? This doesn't happen with every kid? Oh, my gosh. Then comes this realization, and she starts standing up for herself some more but doesn't want to disclose. And again, what is she getting out of this? Hopefully, just justice. Hopefully, that's what she's getting out of this, is some justice. That is it, because otherwise, everything's been turned upside down for her. Again, we've talked about a lot of this.

A prosecutor may not vouch for the credibility of a witness by suggesting that he or she has some special knowledge that the witness is testifying truthfully. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). A prosecutor may, however, argue from the evidence that a witness is worthy of belief. *Dobek*, 274 Mich App at 66.

The prosecutor's remarks about NC's delayed disclosure and her ultimate decision to come forward must be read in context, see *People v Ackerman*, 257 Mich App 434, 452; 669 NW2d 818 (2003), and the context does not suggest that the prosecutor was trying to convince the jury that he had special knowledge that NC was testifying truthfully. To the contrary, the context demonstrates that the prosecutor argued that NC was worthy of belief because she had nothing to gain and much to lose by coming forward with her allegations. The prosecutor had every right to argue that NC was worthy of belief on the basis of the facts adduced at trial. See *Dobek*, 274 Mich App at 66. And the prosecutor's remarks did not imply that he had special knowledge beyond the evidence that NC was telling the truth. See *Bahoda*, 448 Mich at 276. Accordingly, Hurst has not shown that the prosecutor improperly vouched for NC's credibility.

The prosecutor's remark that everything was "turned upside down for" NC was also supported by the evidence. Testimony established that NC no longer spoke to her mother, and her mother testified that she only found out secondhand that NC got married. NC's grandmother

similarly testified that the family no longer spent time together as they once had. As such, there was nothing improper about the prosecutor's remark that NC had actually suffered as a result of her decision to disclose the abuse. See *id.* at 282. A prosecutor does not commit misconduct by discussing evidence that a victim or victims suffered harm or loss. A prosecutor "commits misconduct when he or she invites jurors to suspend their powers of judgment and decide a case on the basis of sympathy or civic duty" rather than the evidence. *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014).

The prosecutor did arguably inject issues broader than guilt or innocence by suggesting that NC would gain nothing, despite all her losses, if the jury did not give her justice. Nevertheless, the comments about justice were isolated and did not constitute a blatant attempt to sway the jury by sympathy alone. For these reasons, the remarks were not particularly prejudicial. See *People v Mayhew*, 236 Mich App 112, 123; 600 NW2d 370 (1999). The prosecutor's remarks about justice did not rise to the level of misconduct warranting relief because it is unlikely that the jury suspended its power of judgment because of these comments. See *Bahoda*, 448 Mich at 286-287.

Further, whatever minor prejudice these remarks arguably could have caused was cured by the trial court's instruction that the lawyers' closing remarks were not evidence, and that the jury had to make its decision on the basis of the evidence and should not be swayed by sympathy. See *Abraham*, 256 Mich App at 279 ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."). See also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000). On this record, to the extent that there was any plain error involving the prosecutor's final remarks, that error had no effect on the outcome and would not warrant relief. See *Carines*, 460 Mich at 763.

Further, Hurst has not shown that defense counsel's failure to object to the prosecutor's remarks amounted to ineffective assistance of counsel. Defense counsel had no obligation to object to remarks that NC and IC were credible because those comments were proper. See *Clark*, 330 Mich App at 426. Defense counsel might also have had a legitimate strategic reason for refraining from objecting to the remarks involving NC's purported hope for justice. There are times when it might be prudent to refrain from objecting to prevent the jury from focusing on the improper argument. See *People v Ullah*, 216 Mich App 669, 685; 550 NW2d 568 (1996). This is especially true given that the cited remarks occurred nearing the end of the prosecutor's closing statement and when defense counsel still had the opportunity to focus the jury on his own version of events. Because there was a viable legitimate strategic reason for the decision not to object, we hold that Hurst has not shown that defense counsel's decision fell below an objective standard of reasonableness under prevailing professional norms. See *Haynes*, 338 Mich App at 429-430. Finally, as already noted, the trial court's instructions cured whatever minimal prejudice accompanied these remarks. As such, Hurst cannot show that, but for the failure to object, there is a reasonable probability that the outcome would have been different. See *Gioglio*, 296 Mich App at 22-23.

## IV. HEARSAY

Hurst next argues that the trial court deprived him of a fair trial by allowing certain hearsay statements into evidence. He also argues that defense counsel provided ineffective assistance by

failing to object to some of the testimony on the ground that the testimony involved inadmissible hearsay.

## A. PRESERVATION AND STANDARDS OF REVIEW

As discussed, to preserve an evidentiary claim of error for appellate review, Hurst had to raise the claim of error in the trial court and raise the same ground for objection on appeal. See *Clark*, 330 Mich App at 414. Defense counsel objected to the hearsay testimony by IC but did not object on hearsay grounds to the testimony of the victims' grandmother. Therefore, Hurst only preserved the first claim of error. See *id*.

This Court reviews de novo, as a constitutional claim, whether a rule or statute governing the admission of evidence violates due process. See *King*, 297 Mich App at 472. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. See *Roper*, 286 Mich App at 90. A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Daniels*, 311 Mich App at 264-265. This Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights. See *Carines*, 460 Mich at 763. Whether defense counsel provided ineffective assistance at trial involves a mixed question of fact and law. *Gioglio*, 296 Mich App at 19. This Court reviews de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Id*. at 19-20.

## B. ANALYSIS

Hurst frames his argument as a challenge to the admission of hearsay testimony, but he asserts in his statement of the question presented that the claim of error is one of constitutional magnitude. As discussed, the application of the rules of evidence can rise to the level of a constitutional violation in some rare cases. See *Scheffer*, 523 US at 308. Hurst, however, has not argued or identified any basis for concluding that the application of the rules of evidence involving hearsay were applied in such a way as to rise to the level of a constitutional violation. By failing to offer any meaningful analysis of that aspect of his claim of error, Hurst abandoned it on appeal. See *Clark*, 330 Mich App at 426.

The rules of evidence prohibit the admission of hearsay, except as otherwise provided by the rules. See MRE 802. Hearsay is defined to be a "statement, other than the one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." MRE 801(c).

Hurst first argues that the trial court erred when it allowed IC to testify about her conversation with her grandmother, which prompted her to reveal that Hurst sexually abused her. IC testified that she first revealed the abuse to her grandmother after her grandmother picked her up to take her out to dinner:

> *Q*. Yeah? Okay. So [your grandmother] came and picked you up for dinner?
>
> *A*. Yes.

*Q*. Okay. So tell me what happened then.

*A*. I started to ask her—because we celebrated Christmas on the 24th at my dad's house because of my mom and dad. So I had asked her who was coming to the Christmas, because we normally have big holidays and, like, our family comes over, and she said it's not going to be like a very big Christmas this year, and I asked who would be there, and she said, "I'm not sure."

*Mr. Perlman*: Judge, I'm going to object to hearsay.

*The Court*: Hearsay?

*Mr. Butler*: Yeah. I don't think it would go to the proof of the—the truth of the matter asserted, your Honor.

*The Court*: I concur with that, and I think it moves things along. And so we're getting to you were at a Christmas party. So you can continue there. I'll overrule the objection.

*By Mr. Butler*:

*Q*. Yeah. So you're sitting in the car. You're talking with—

*A*. Yeah.

*Q*. —[your grandmother]. You're asking who's going to be there—okay? —and she says what?

*A*. She said—I asked her if the Defendant would be there, and she said, "No. He's long gone." And I asked her what she meant by that, and then she told me that he sexually assaulted [NC], and I started crying. And then I told her if I could be—I asked her if I could be honest with her, and I told her that it happened to me too, and—yeah. We went out to dinner with her boyfriend at the time and his son, and then I told my mom on the 24th too.

Hurst maintains that it was improper to allow IC to testify that her grandmother told her that Hurst would not be there and that he would not be there because he sexually assaulted NC. It is plain from the context that IC related these statements by her grandmother to explain the context for her decision to reveal that she too had been abused. Stated another way, IC's testimony about her grandmother's statements were offered to show how the statements affected her and not to prove that Hurst would not actually be at the Christmas party or to establish that Hurst had in fact sexually assaulted NC. Rather, IC testified about her grandmother's statements to explain why she decided to reveal Hurst's abuse of her at that moment. Accordingly, the trial court did not err when it determined that IC's recitation of those statements did not amount to hearsay. See MRE 801(c); *People v Gaines*, 306 Mich App 289, 306-307; 856 NW2d 222 (2014) ("An out-of-court statement introduced to show its effect on a listener, as opposed to proving the truth of the matter asserted, does not constitute hearsay under MRE 801(c). Such statements are not offered for a

hearsay purpose because their value does not depend upon the truth of the statements.") (Cleaned up).

Hurst also complains that the trial court allowed the victims' grandmother to testify about statements that NC and IC made to her. The evidence showed that both NC and IC revealed that Hurst had been sexually abusing them to their grandmother before disclosing it to anyone else. The context involving the disclosures by NC and IC was important to their credibility. To that end, the prosecutor asked the victims' grandmother about the events of the family gathering.

The victims' grandmother described the gathering and noted the participants. She then relayed that NC became visibly distraught when she learned that Hurst brought NC's mother to the gathering. As part of her description, the victims' grandmother told the jury about the statements NC made when confronted with the possibility that Hurst might walk through the door. In addition to statements about wanting to leave, the victims' grandmother told the jury that NC revealed that there had been some bad events. She explained that NC said that Hurst had sexually abused her and punched her, and that she was concerned about IC. She also stated that NC told her that Hurst abused her from the age of 4 to the age of 13 and that he did not stop abusing her until she began to fight back.

The trial court did not plainly err to the extent that it chose not to act on its own initiative to exclude the victims' grandmother's testimony relating the statements by NC. The victims' grandmother had to provide NC's statements to show how NC's statements affected her. It was also important to provide context for understanding how she reacted—namely, her decision not to tell anyone what NC had revealed, and to not take any immediate steps to involve authorities or to protect IC. Specifically, the victims' grandmother testified that she did not tell anyone because NC asked her not to tell anyone. It was also important that NC told her grandmother that Hurst stopped abusing her when she was 13 years old, which suggested that she did not have to take immediate action to protect NC.

The victims' grandmother's recollection of NC's statements was also important to understand the context involving IC's subsequent revelation. IC testified that she only revealed her abuse after first suspecting that something happened to NC because of NC's behavior at the gathering and after her grandmother confirmed to IC that NC told her that Hurst sexually abused her. The context showed that the prosecutor did not elicit the testimony to prove the truth of the matters asserted, but instead to provide context and show how the statements affected the actions of the victims' grandmother. Therefore, these statements were also not inadmissible hearsay. See MRE 801(c); *Gaines*, 306 Mich App at 306-307.

The same is true of the grandmother's testimony about IC's statements. The grandmother testified that she remembered December 23, 2021, quite well because that was the day IC revealed that Hurst also abused her. Her testimony that IC told her on that day was important to evaluating the victims' grandmother's credibility and for understanding the context of her subsequent actions. Accordingly, the testimony was admissible for a proper purpose other than to establish the truth of the matter asserted. As such, this testimony was also not hearsay. MRE 801(c); *Gaines*, 306 Mich App at 306-307.

The trial court did not plainly err when it allowed the victims' grandmother to testify about the statements that NC and IC made to her for the purpose of showing how those statements affected her and to provide context for her subsequent actions. See *Carines*, 460 Mich at 763.

Hurst also claims that defense counsel provided ineffective assistance by failing to object to the grandmother's testimony about the statements made to her by IC and NC. As already noted, her testimony was not offered to prove the truth of the matters asserted, and so was not hearsay under MRE 801(c). See *Gaines*, 306 Mich App at 306-307. As such, defense counsel cannot be faulted for failing to object on that basis. See *Clark*, 330 Mich App at 426. Additionally, given that defense counsel vigorously cross-examined the witnesses about the statements and pointed out inconsistencies, defense counsel may have refrained from objecting so that he could dig into the inconsistencies on cross-examination and use them to attack the witness's credibility. Because there was a viable legitimate strategic reason for defense counsel's decision not to object, we cannot conclude that the failure to object fell below an objective standard of reasonableness under prevailing professional norms. See *Haynes*, 338 Mich App at 429-430.

## V. CONSECUTIVE SENTENCING

### A. STANDARD OF REVIEW

Hurst next argues that the trial court abused its discretion when it ordered him to serve his sentences for Counts I and II consecutively because, when considered together, the trial court effectively sentenced him to life in prison.

This Court reviews de novo whether the trial court properly applied the law when determining whether it had the authority to order consecutive sentencing. *People v Lee*, 233 Mich App 403, 405; 592 NW2d 779 (1999). When the trial court has been authorized to order consecutive sentencing, this Court reviews the trial court's exercise of its discretion to order consecutive sentencing for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Id*.

### B. ANALYSIS

A trial court must ordinarily order a defendant to serve his or her sentences concurrently unless the Legislature has specifically authorized consecutive sentencing. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012). The Legislature provided, however, that a trial court "may order a term of imprisonment" imposed for a conviction of CSC-I to be "served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." MCL 750.520b(3).

The trial court apparently relied on MCL 750.520b(3) to impose consecutive sentencing involving Hurst's first two counts. The statute, however, allows consecutive sentencing only for criminal offenses arising from the same transaction. To be part of the same transaction, the crimes must be part of a continuous sequence of events:

The term same transaction is not statutorily defined[.] But it has a temporal requirement. For example, [f]or multiple penetrations [in a CSC case] to be considered as part of the same transaction, they must be part of a continuous time sequence, not merely part of a continuous course of conduct. [*People v DeLeon*, 317 Mich App 714, 722; 895 NW2d 714 (2016) (quotation marks and citations omitted).]

Counts I and II dealt with sexual penetrations that occurred on separate dates against different victims. For that reason, the counts plainly did not involve the same criminal transaction. As the prosecutor concedes on appeal, the trial court plainly erred to the extent that it determined that MCL 750.520b(3) authorized it to order consecutive sentencing for those two counts.

On appeal, the prosecutor argues that the trial court may nevertheless be able to identify two or more CSC convictions that would permit consecutive sentencing. He asks us to remand the case to give the trial court the opportunity to revisit its authority to order consecutive sentencing. We decline the prosecutor's request for resentencing. The Legislature has stated that a reviewing court should not wholly reverse or annul a judgment of sentence imposed in excess of that allowed by law, but should instead only reverse or annul a judgment of sentence to the extent that it was unlawful. See MCL 769.24; *People v Thomas*, 447 Mich 390, 393-394; 523 NW2d 215 (1994). Accordingly, we vacate the sentence to the extent that the trial court ordered Hurst to serve his sentences for Counts I and II consecutively, and remand this case to the trial court for the ministerial task of amending the judgment of sentence to reflect that Hurst is serving all his convictions concurrently.

## VI. CRUEL AND/OR UNUSUAL PUNISHMENT

### A. PRESERVATION AND STANDARD OF REVIEW

Hurst argues that the trial court's decision to sentence him to lifetime registration under SORA and to lifetime electronic monitoring amounted to cruel and/or unusual punishments. To preserve a claim that his sentence was cruel and/or unusual, Hurst had to raise that issue in the trial court. See *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). He did not challenge either provision as cruel and/or unusual punishment in the trial court. Therefore, he has not preserved these claims of error for appellate review. See *id*.

This Court reviews de novo whether a trial court properly applied the constitutional standards to Hurst's sentencing. *Id*. Because Hurst did not preserve these claims of error, this Court's review is limited to determining whether there was plain error that affected Hurst's substantial rights. See *Carines*, 460 Mich at 763.

### B. ANALYSIS

The Constitutions of both Michigan and the United States protect persons convicted of crimes from excessive punishments. Michigan's Constitution, however, applies a heightened protective standard in that it protects a person from either cruel *or* unusual punishment. See *People*

*v Parks*, 510 Mich 225, 243; 987 NW2d 161 (2022). Because Michigan's Constitution provides greater protection, if a statute passes Michigan's test, it necessarily passes the federal test:

> "The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id.* (cleaned up). "[U]nder the Michigan Constitution, the prohibition against cruel or unusual punishment include[s] a prohibition on grossly disproportionate sentences." *Id.* [*Burkett*, 337 Mich App at 636.]

Hurst first maintains that requiring him to register under SORA for the remainder of his life is unconstitutional on its face and as applied to him because the requirement did not include a separate individualized risk assessment and the trial court made no assessment of the risk that he posed. SORA is presumed to be constitutional, and Hurst has the burden to show the contrary. See *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685); slip op at 8-9. "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as-applied challenge considers the specific application of a facially valid law to individual facts." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022) (quotation marks and citations omitted).

Because the jury convicted Hurst of sexually assaulting a child under 13 years of age, Hurst was a Tier-III sex offender under SORA. See MCL 28.722(v)(*iv*). Although the Legislature provided a method for discontinuing registration, see MCL 28.728c(2) and (3), Hurst will likely have to register under SORA for the remainder of his life, see MCL 28.725(13). Hurst will accordingly be subject to several reporting requirements if he should ever be released from prison. See *Jarrell*, 344 Mich App at 484.

In *People v Kiczenski*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364957), this Court ruled that registration under the 2021 version of SORA does not constitute punishment under the Ex Post Facto Clauses of the federal constitution, U.S. Const., art. I, § 10, and the state constitution, Const. 1963, art. 1, § 10, as applied to those convicted of CSC-I. *Id.*, slip op at 1, 13. Although *Kiczenski* involved an ex post facto challenge to SORA, the Court stated that the analysis is the same as a challenge that SORA registration constitutes cruel or unusual punishment. *Id.* at 7 n 4. Although the *Kiczenski* panel made this observation in a footnote, and did not analyze SORA on the same ground asserted by Hurst, it stands to reason that, if SORA registration does not constitute a punishment for those convicted of CSC-I, the same analysis would result in a finding that SORA cannot amount to cruel or unusual punishment for those convicted of CSC-I. We also independently hold that SORA registration does not constitute cruel or unusual punishment facially or as applied to Hurst, who is a CSC-I offender for crimes against children.

Michigan's Constitution protects against the imposition of cruel or unusual punishments and the prohibition includes protection against a sentence that is grossly disproportionate to the offender and his or her offense. *Burkett*, 337 Mich App at 636. Accordingly, the relevant inquiry under Const 1963, art 1, § 16 is whether the imposition of a lifetime registration requirement is so

-16-

grossly disproportionate that it amounts to cruel or unusual punishment. See *People v Bullock*, 440 Mich 15, 34-35 n 17; 485 NW2d 866 (1992) (clarifying the difference between proportionality analysis under ordinary sentencing principles and under Const 1963, art 1, § 16). Our Supreme Court has stated that courts should examine four factors when determining whether a sentence is cruel or unusual: "(1) the severity of the sentence relative to the gravity of the offense; (2) sentences imposed in the same jurisdiction for other offenses; (3) sentences imposed in other jurisdictions for the same offense; and (4) the goal of rehabilitation . . . ." *Parks*, 510 Mich at 242.

Examining these factors demonstrates that lifetime registration is neither cruel nor unusual on its face or as applied to Hurst. CSC-I is one of the gravest offenses recognized by our society. See *Jarrell*, 344 Mich App at 485. For that reason, the Legislature has authorized a general punishment of up to life imprisonment, see MCL 750.520b(2)(a), and, for criminal sexual conduct against a child under 13 years of age, has mandated a minimum sentence of 25 years in prison, MCL 750.520b(2)(b). A general registration requirement is not particularly excessive in light of the gravity of the offense and recognition that it is worthy of a significant punishment. *Parks*, 510 Mich at 242. As applied to Hurst, it is also not excessive. The evidence showed that Hurst repeatedly sexually abused two very young children who were members of his extended family over more than 15 years. He also did so under aggravating circumstances: he tried to make his victims willing participants by inducing them with treats and by normalizing his conduct as appropriate adult-child behavior.

Mandatory registration is not unduly harsh when compared to other penalties in this state or in other states. Michigan's Legislature has provided for long minimum sentences and even for lifetime imprisonment without the possibility of parole for CSC-I involving aggravating circumstances, as have other states. One such aggravating circumstance involves sexually assaulting children under 13 years of age. See *Jarrell*, 344 Mich App at 485-486. And this Court has already held that a mandatory minimum sentence of 25 years in prison does not constitute cruel or unusual punishment for a CSC-I conviction involving a child as a result of the severe harms caused by such acts:

> Defendant also argues that the mandatory 25-year minimum sentence is unduly harsh compared to penalties for other offenses under Michigan law, including many violent offenses. We are not persuaded that these comparisons render the 25-year minimum sentence disproportionate to the offense. The perpetration of sexual activity by an adult with a preteen victim is an offense that violates deeply ingrained social values of protecting children from sexual exploitation. Even when there is no palpable physical injury or overtly coercive act, sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences. The unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25-year minimum

sentence is unduly harsh. [*Benton*, 294 Mich App at 206 (quotation marks and citations omitted).][4]

The same is true for the mandatory registration requirement. A sex offender who targets and abuses children has committed one of the most heinous offenses recognized by society. The harms occasioned by such conduct have been recognized to have far-reaching effects and to warrant the most severe penalties. Moreover, the Legislature's stated goals for SORA most aptly apply to offenders who committed CSC-I against children. See *People v Betts*, 507 Mich 527, 559; 968 NW2d 497 (2021) (stating that one of the Legislature's goals in enacting SORA was to protect the people—and especially children—from sex offenders). And, as the prosecutor correctly observes, the Legislature deemed that offenders from this most serious class should be subject to lifetime registration without regard to individualized assessment of risk, and we will not lightly overturn the Legislature's policy choice involving this class of offenders. See *Lymon*, ___ Mich at ___; slip op at 8-9; *Oakland County v State*, 325 Mich App 247, 260; 926 NW2d 11 (2018) ("Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent.") (Quotation marks and citation omitted).

As applied to Hurst, he engaged in the type of sexual exploitation and abuse of children that the Legislature has identified as the most egregious. Furthermore, he victimized children from his family over a period of years beginning when they were very young. The record further permitted an inference that Hurst chose his second child victim after his first child victim began resisting his abuse. Accordingly, there was record evidence to support a finding that Hurst posed a serious risk of recidivism. Consequently, these factors also do not support the conclusion that lifetime registration constitutes cruel or unusual punishment. See *Parks*, 510 Mich at 242.

Finally, although lifetime registration does not advance the goal of rehabilitation, the first three factors strongly support a determination that lifetime registration does not amount to cruel or unusual punishment. See *Jarrell*, 344 Mich App at 486-487. That conclusion is especially true as applied to Hurst.

For these reasons, we conclude that Hurst has not demonstrated that lifetime registration under SORA amounted to cruel or unusual punishment on its face or as applied to him under Michigan's Constitution; therefore, he has not demonstrated that his sentence amounted to cruel and unusual punishment under the Constitution of the United States either. See *Burkett*, 337 Mich App at 636.

---

[4] Hurst suggests that his offense was a nonviolent offense similar to the offenses at issue in *Bullock* and *Lorentzen*. Both those cases involved offenders who were sentenced to harsh mandatory minimum sentences for first time drug offenses. See *Bullock*, 440 Mich at 22, 38; *People v Lorentzen*, 387 Mich 167, 170-171; 194 NW2d 827 (1972). Hurst's repeated sexual assault of two young children is not comparable to those nonviolent offenses.

Hurst similarly argues that the Legislature's requirement that he be subject to lifetime electronic monitoring also constitutes cruel or unusual punishment and violates his Fourth Amendment right to be free from unreasonable search and seizure.

The Legislature provided that a person convicted of CSC-I "for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age" must be "sentenced to lifetime electronic monitoring" under MCL 791.285. See MCL 750.520n(1). In *People v Hallak*, 310 Mich App 555, 573-581; 873 NW2d 811 (2015), reversed not in relevant part and remanded for resentencing 499 Mich 879 (2016), this Court addressed both these claims and rejected them. As Hurst acknowledges, because our Supreme Court did not reverse *Hallak* in the relevant part, we must follow it. See MCR 7.215(C)(2).

## VII. CONCLUSION

For the reasons discussed, we affirm Hurst's convictions. We vacate Hurst's judgment of sentence, but only to the extent that the trial court ordered him to serve his sentences for Counts I and II consecutively. In all other respects, we affirm. Finally, we remand the case to the trial court for the ministerial task of amending the judgment of sentence in accord with this decision.

Affirmed in part, vacated in part, and remanded for correction of the judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani